J-A16041-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| PENNSYLVANIA ELECTRIC CO. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON S. RUSSELL, KARP EXCAVATING LTD, MICHELLE L. HARNISH, LYNN R. HOTTLE | : | |
| | : | |
| | : | No. 1472 MDA 2022 |
| | : | |
| | : | |
| APPEAL OF: AARON S. RUSSELL | : | |

Appeal from the Order Entered September 23, 2022
In the Court of Common Pleas of Bradford County Civil Division at No(s):
2020CV0114

BEFORE:     PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:        **FILED: AUGUST 15, 2023**

In this negligence, unjust enrichment, and quantum meruit matter, Aaron S. Russell (Appellant) appeals from the order entered in the Bradford County Court of Common Pleas, denying his motion to open the default judgment of $291,823.96 against him, and in favor of Pennsylvania Electric Co. (Appellee).  Appellant avers the trial court erred in: (1) finding he had no reasonable excuse for not responding to the complaint, where Appellant had argued communications with Appellee's counsel led to an "honest belief that he would be dropped from this lawsuit[;]"and (2) refusing to hold a hearing on this issue.  **See** Appellant's Brief at 12.  We agree Appellant is entitled to a hearing, and thus vacate the order denying his petition to open default judgment and remand for further proceedings.

## I. Complaint Allegations

Appellee is a Pennsylvania public electric utility company. Appellee's Complaint, 7/20/20, at ¶ 1. Its complaint averred the following: Appellant was the title owner of real property located on Route 187 in Rome Township, Bradford County. *Id.* at ¶ 6. Appellee owned and maintained on this property electric lines, utility poles, and other appliances necessary to its electric utility work. *Id.* at ¶ 9. At the time of the underlying incident, Appellant had entered into a contract to sell the property to defendants Michelle L. Harnish and Lynn R. Hottle. They in turn hired defendant Karp Excavating Ltd. (Karp) to perform excavation and construction work on the property. *Id.* at ¶ 7. Nevertheless, Appellee stated, Appellant "maintained an ownership interest in the Property[,]" while Harnish and Hottle "had equitable rights to the Property."[1] *Id.* at ¶ 8.

The complaint further alleged that sometime in the winter of 2018 or spring of 2019, defendant Karp "knocked down [Appellee's] utility poles," causing environmental damage, specifically the leaking of oil, a hazardous material, from transformers into the soil. *Id.* at ¶¶ 12-15, 19. Appellee repaired the damage and hired environmental contractors to assist in the cleanup.

---

[1] In a later filing, Appellant averred the deed, transferring the property to Harnish, was recorded on July 24, 2020. Appellant's Motion for Reconsideration, 10/7/22, at 2 (unpaginated).

On July 20, 2020, Appellee filed the underlying complaint, raising claims of: (1) negligence against Karp; (2) negligence against Harnish and Hottle; and (3) unjust enrichment and quantum meruit against Appellant, Harnish, and Hottle, asserting they all "received a valuable benefit by having [Appellee] clean and rectify the oil spill[.]" *See* Appellee's Complaint at ¶ 28(f). The complaint sought damages of $291,823.96 — the alleged cost of the cleanup.

We review the following docket activity in chronological order. In August of 2020, defendant Karp filed an answer and new matter. On October 5, 2020, Appellee filed a reply thereto. On October 8th (80 days after the filing of the complaint), Appellee apparently sent a Pa.R.C.P. 237.1 10-day notice to Appellant, advising that judgment could be entered against him for failure to enter his appearance and file any response. As we discuss *infra*, Appellant avers he did not receive his notice. In any event, in March of 2021, Harnish and Hottle together filed a joint answer, new matter, and cross-claim, and Appellee filed a reply thereto.

Over the next 10 months, there is minimal activity on the trial docket, all relating to discovery and depositions concerning the defendants Karp, Harnish, and Hottle. *See* Trial Docket at 2. Appellant, however, had not filed any responsive pleading to Appellee's complaint.

Despite the 10-day period provided in the October 8, 2020, notice, Appellee waited until July 19, 2022, 21 months later, to file a praecipe to enter

default judgment against Appellant in the full amount of $291,823.96, plus interest and costs.

On August 8, 2022, Appellant filed the underlying *pro se* petition to open the default judgment. He acknowledged he was served with the complaint in July of 2020, but averred he had a meritorious defense — namely, that he was not in possession or control of the subject property at the time of the incident. Instead, Appellant claimed, he merely had a "right to receive final payment under an agreement of sale to Defendant Harnish[.]" Appellant's Petition to Open Default Judgment, 8/8/22, at 2 (unpaginated). Appellant further alleged: (1) in August of 2020, his insurance carrier denied coverage for this incident; and (2) he did not receive Appellee's 10-day notice. **See id.** at 1. He attached a *pro se* draft of preliminary objections, which argued the same.

In opposition to the petition to open default judgment, Appellee argued, *inter alia*: (1) Appellant could not "adequately explain his inaction after being served with the Complaint on July 31, 2020[;]" (2) Appellant's "vague claims that the property was not in his possession . . . entirely misses the point of the" complaint allegations, which was that Appellee "undertook significant repairs" and "cleaned an oil spill on [his] property, the result of which greatly increased the value of [his] property[;]" and (3) in any event, Appellant failed to attached a proposed answer to his petition to open, as required by the

rules.  Appellee's Answer & Brief in Opposition to Petition to Open Default Judgment, 8/30/22, at 4 (unpaginated).

On September 23, 2022, the trial court denied Appellant's petition to open the default judgment.  The court considered the relevant three-prong test (discussed *infra*) and found in Appellant's favor on two factors: he promptly filed the petition to open and he raised a meritorious defense — that he did not possess or have control of the property at the subject time.  Order, 9/23/22, at 1.  However, the court found Appellant failed to present a reasonable excuse why he did not act on the complaint, which was served on him two years earlier.  The court reasoned Appellant's additional claim, that he did not receive the 10-day notice, was not relevant to this failure to respond to the complaint.  *Id.* at 1-2.

Appellant filed a *pro se* motion for reconsideration on October 7, 2020.  With regard to why he did not respond to the complaint, Appellant claimed: (1) he had informed Appellee's attorney he "sold the property to . . . Harnish on September 1, 2018[, and she] took possession and full responsibility for the property at that time and began the process of constructing her new sale barn[;]"[2]  (2) Appellant thus did not have insurance on the property; (3) Appellant did not benefit from Appellee's repair of the damage to the property;

---

[2] Appellant also stated he "financed a portion of the sale" of the property to Harnish.  Appellant's Motion for Reconsideration, 10/7/22, at 2.

(4) the deed, transferring the property to Harnish, was recorded on July 24, 2020; (5) upon being served with the complaint on July 31, 2020, he "immediately sought legal advice" and was advised to ascertain whether he had insurance coverage; (6) on August 21, 2020, his insurance company sent him a letter, stating his "farm policy did not cover the property[;]" (7) Appellant believed his "name [w]ould be dropped from the lawsuit once it was confirmed [Harnish] did indeed own the property[;]" (8) Appellant possessed "voicemail messages from [Appellee's] attorney on 6/10/2020 and 6/23/2020, indicating [they] knew [Appellant] had sold the property[;]" (9) from the time the complaint was served until August of 2022 (after default judgment was entered), Appellant "received no communication from [Appellee's] attorney other than copies of filings regarding the other defendants[;]"[3] (10) "[a]s far as [he] knew, [Appellee] was still waiting for enough discovery information . . . to have [his] name dropped from the lawsuit[;]" and (11) Appellee's "[a]ttorney had indicated . . . he would not enter" a default judgment, Appellant "would have time and an opportunity to find and hire a civil defense lawyer if it became apparent [he] needed to do so[, and he] was told [Appellee] was required by law to file a 10-day notice and [he] would be

_____

[3] Appellant averred that on August 2, 2023, he received a voicemail from Appellee's counsel requesting his attendance at a deposition, and he (Appellant) gave a deposition on August 18th. Appellant's Motion for Reconsideration at 2. Appellant further insisted he has "cooperated to the best of [his] ability[.]" *Id.*

notified ahead of time[.]" Appellant's Motion for Reconsideration at 1-3 (unpaginated). Finally, Appellant conceded he "should have . . . hired a civil defense lawyer at the onset of the this lawsuit[,]" but as he lacked insurance coverage, "the cost of doing so was very significant at the time. [He] truly believed that once [Appellee] discovered [he] no longer owned the property and had given up possession . . . long before [the underlying] incident[,] that [Appellee] would drop [his] name from the suit." *Id.* at 3.

Appellee filed a response, denying it ever informed Appellant he would be removed from the lawsuit, and "certainly not that he was granted an extension to plead." Appellee's Response to Appellant's Motion for Reconsideration, 10/17/22 at 2 (unpaginated)[4]

The trial court denied the motion for reconsideration on October 14, 2022. Appellant took this timely appeal[5] and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal. The court did not file an opinion, but instead relied on the statements in its September 23rd order. Statement in Lieu of Opinion, 12/15/22.

---

[4] Appellee's response to Appellant's motion of reconsideration was entered as filed on the trial docket on October 17, 2022, three days after the October 14th order denying the motion for reconsideration.

[5] The order denying the petition to open default judgment was entered on September 23, 2022, and Appellant filed the notice of appeal within the 30-day appeal period, on October 19th. *See Green v. Tr. of the Univ. of Pa.*, 265 A.3d 703, 707 n.4 (Pa. Super. 2021) (filing of a timely motion for reconsideration does not toll running of 30-day appeal period).

Subsequently, present counsel for Appellant entered their appearance in this Court.

## II.  Statement of Questions Involved

Appellant raises two related issues for our review:

1. Whether the trial court erred by denying the Petition to Open Default Judgment when it determined that [Appellant] did not have a "reasonable excuse" for failing to act upon the original Complaint?

2. Whether the trial court erred by failing to grant [Appellant] an evidentiary hearing as to whether there existed a "reasonable excuse" for failing to act upon the original Complaint?

Appellant's Brief at 5.

## III.  Standard of Review & Relevant Law

We first review the relevant standard of review and guiding principles on opening default judgments.

> It is well settled that a petition to open a default judgment is an appeal to the equitable powers of the court, and absent an error of law or a clear, manifest abuse of discretion, it will not be disturbed on appeal.  An abuse of discretion occurs when a trial court, in reaching its conclusions, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or the result of partiality, prejudice, bias or ill will.

*Myers v. Wells Fargo Bank, N.A.*, 986 A.2d 171, 175 (Pa. Super. 2009) (citations omitted).

> This Court has stated:
>
> A default judgment will be opened "if the moving party has (1) promptly filed a petition to open the default judgment, (2) provided a reasonable excuse or explanation for failing to file a responsive pleading, and (3) pleaded a meritorious defense to the allegations contained in the complaint."

- 8 -

*Green*, 265 A.3d at 709 (citations omitted). We further consider:

> [D]efault judgments are not favored at law or in equity. Hence, we liberally apply equitable principles that favor allowing parties to defend causes of action on the merits in deciding whether to open a default judgment.

*Id.* (citation omitted).

> A petition to open a judgment by default is addressed to the equity side of the court:
>
> > In determining whether a judgment by default should be opened, we must ascertain whether there are present any equitable considerations in the factual posture of the case which require that we grant to a defendant against whom the judgment has been entered an opportunity to have his "day in court" and to have the cause decided upon the merits. In so doing, we act as a court of conscience.

*Provident Credit Corp. v. Young*, 446 A.2d 257, 260-61 (Pa. Super. 1982) (*en banc*) (citations omitted).

With regard to the second prong of the test above — whether the petitioner has presented a reasonable explanation for not filing a responsive pleading — this Court has stated:

> "[W]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case. The appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion."

*Myers*, 986 A.2d at 176 (citation omitted). "[W]here the failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the

rights and duties of the [petitioner], the default judgment may be opened."

*Id.* at 177 (citation omitted).

This Court has explained:

The [above tripartite] test will often provide a ready determination — a navigator's "quick fix" — of where the equities lie. For example, in a case where no attempt has been made to explain the default or delay, or where, in an assumpsit case, no defense has been pleaded, or only one clearly without merit, it is difficult to imagine that the equities would favor opening the judgment. **But where some showing has been made with regard to each part of the test, a court should not blinder itself and examine each part as though it were a water-tight compartment, to be evaluated in isolation from other aspects of the case. Instead, the court should consider each part in light of all the circumstances and equities of the case**. Only in that way can a chancellor act as a court of conscience.

*Allegheny Hydro No. 1 v. Am. Line Builders*, 722 A.2d 189, 192 (Pa. Super. 1998) (emphasis in original), *quoting Provident Credit Corp.*, 446 A.2d at 264. Finally, should a trial court find that all three prongs have been met, the court should consider the prejudice to both parties in opening, or refusing to open, a default judgment. *See Fink v. Gen. Acci. Ins. Co.*, 594 A.2d 345, 349 (Pa. Super. 1991); *but see Dumoff v. Spencer*, 754 A.2d 1280, 1283 (Pa. Super. 2000) (prejudice is not a separate element examined by the courts if a petitioner did not establish all three requirements of the test to open the default judgment).

## IV. Appellant's Arguments

We review Appellant's two issues together. First, he avers the trial court erred in denying his petition to open the default judgment, and in finding he

did not have a reasonable excuse for not acting on the complaint. Appellant acknowledges he received the complaint but insists he had "legitimate reasons not to respond to" to the complaint, and this was not "a case where absolutely no action was taken." Appellant's Brief at 11-12. Appellant maintains "he consulted with an attorney, checked with his insurance company," and, through communications with Appellee's counsel, honestly believed "he would be dropped from the lawsuit." *Id.* at 12. Furthermore, Appellant reiterates: (1) he was "neither in possession or control of the land[;]" (2) he "was never served with the requisite Ten Day Notice[;]" and (3) in October of 2020, when the 10-day notice was mailed, the post office "was in a state of upheaval and mail was simply not being delivered due to the COVID-19 pandemic." *Id.* at 11-12.

In his second issue, Appellant alleges the trial court erred in failing to conduct a hearing on the issue of whether he had a reasonable excuse for not acting on the complaint. He emphasizes that "lack of notice is fatal to the entry of a default judgment," and Appellee has not disputed that he did not receive the 10-day notice. Appellant's Brief at 13-14. Appellant acknowledges "that courts often treat assertions of lack of notice as . . . disingenuous or self-serving[,]" but asserts that here, the court undertook "absolutely no inquiry" into his claims. *Id.* at 14.

Appellee responds Appellant is due no relief on his "bald allegations of [his] inexplicable [and bizarre] 'understanding' that he would be removed

from the lawsuit for no apparent reason[,]" where he "chose to undertake no discovery or create any sort of record to explain or justify these 'understandings[.]'" Appellee's Brief at 7. Appellee further points out Appellant did not "request an evidentiary hearing or delay decision on the Petition and Answer such that depositions could be taken." *Id.*

We conclude that under the particular averments in this case, Appellant was entitled to a hearing on his petition to open default judgment.

## V. Analysis

Our review is guided by the well-established principles that: default judgments are not favored at law or in equity; "we liberally apply equitable principles that favor allowing parties to defend causes of action on the merits[;]" and this Court may act as a court of conscience. *See Green*, 265 A.3d at 709; *Provident Credit Corp.*, 446 A.2d at 260-61. We emphasize the trial court found — in addition to Appellant's prompt filing of a petition to open default judgment — that he had a meritorious defense: that Appellant did not possess or have control of the property at the subject time. *See* Order, 9/23/22, at 1.

At this juncture, we reiterate there was no hearing on Appellant's petition to open default judgment, and the trial court did not issue a Rule 1925(a) opinion. With respect to the third prong of the open-default judgment test — whether Appellant provided a reasonable excuse for failing to file a responsive pleading — the trial court's rationale was, in sum:

> The failure to act on the original complaint can[not] be reasonably excused. Here, [Appellant] has not set forth a reasonable excuse as to why he has not acted upon the original complaint being served upon him in the past two (2) years. Although he claims he did not receive the Notice of Default Judgment served upon him on or about October 8, 2020, this does not explain why has done nothing in regards to the original complaint being filed.

> Because [Appellant's] petition does not meet all three (3) elements, it must be DENIED.

*See* Order, 9/23/22, at 1-2.

This conclusion, however, was not supported by any particular discussion of the parties' competing arguments, as to whether Appellant had, following communications with Appellee's counsel, a good faith understanding he would be removed from the suit once it was determined he had sold the property. Appellant claimed he received voicemails from Appellee's counsel, while Appellee denied it ever advised Appellant he could be removed from the suit.

The trial court also did not address the weight, if any, it gave to exhibits submitted by Appellee, which would **support Appellant's claim** that he initially consulted with an attorney. Appellee attached, to its response to the motion for reconsideration, a copy of an email message, dated August 31, 2020, from Robert Chappell, Esquire, and addressed to Appellee's attorney. Attorney Chappell stated: (1) Appellant and defendants Harnish and Hottle had contacted him regarding the complaint, although they had not formally retained him; and (2) each defendant had "been directed to contact their

respective insurance companies."[6]   Exh. 1 to Appellee's Response to Appellant's Motion for Reconsideration.   Attorney Chappell requested additional time to file a responsive pleading for **each** defendant.   *Id.* Appellee's counsel replied the following day, agreeing to an extension.   Exh. 2 to Appellee's Response to Appellant's Motion for Reconsideration.   Almost two months later, on October 27, 2020, Appellee's counsel emailed Attorney Chappell, acknowledging that Hottle and Harnish had retained other counsel, advising he was prepared to file a default judgment against Appellant, and inquiring whether Appellant had counsel.   Exh. 3 to Appellee's Response to Appellant's Motion for Reconsideration.   However, Appellee explained, its counsel "did not hear from Attorney Chappell again until after the Default Judgment was filed."   Appellee's Response to Appellant's Motion for Reconsideration at 2.   In any event, Appellee did not state whether Attorney Chappell conveyed the above information to Appellant.   *See id.*

We further consider that although the trial docket indicates that Appellee and the other three defendants have engaged in some discovery — and Appellant has averred he attended a deposition — the entire amount of the alleged damages, $291,823.96, has now been imposed on Appellant solely. We reiterate the trial court found Appellant had a meritorious defense to

---

[6] Harnish and Hottle's answer, new matter, and counter claim were **not** filed by Attorney Chappell.

Appellee's unjust enrichment/quantum meruit claim — that he was not in possession or control of the property.

While it is true Appellant did not articulate a specific request for a hearing, a court may liberally construe materials filed by a *pro se* litigant. **See Commonwealth v. Blakeney**, 108 A.3d 739, 766 (Pa. 2014). **But see id.** (under Pennsylvania law, *pro se* litigants are subject to the same rules of procedure as are represented clients, *pro se* status confers no special benefit upon a litigant).[7] In his petition to open judgment and motion for reconsideration, Appellant requested the opportunity to respond to the complaint and defend himself in this matter. Appellant's Petition to Open Default Judgment at 2; Appellant's Motion for Reconsideration at 4. Finally, we consider that Appellant has now retained counsel.

In light of all the foregoing pleadings, as well as equitable considerations, we conclude Appellant is entitled to limited relief in the form of an evidentiary hearing. **See Provident Credit Corp.**, 446 A.2d at 260-61. We vacate the order of the trial court denying his petition to open default judgment, and we remand for a hearing, where both parties may present oral

---

[7] Furthermore, we note Appellant did address why he did not respond to the complaint until his motion for reconsideration. **See** Pa.R.C.P. 227.1(b)(1) ("post-trial relief may not be granted unless the grounds therefor . . . were raised in pre-trial proceedings or by motion, objection, point for charge, request for findings of fact or conclusions of law, offer of proof or other appropriate method at trial"). Nevertheless, neither the trial court nor Appellee has suggested these arguments should be found waived.

argument and evidence. In reviewing whether Appellant had a reasonable excuse or explanation for failing to file a responsive pleading, the court shall consider whether "the failure to answer was due to an oversight, an unintentional omission to act, or a mistake of the rights and duties of" Appellant. **See Myers**, 986 A.2d at 176. The court may also consider, if applicable, whether each party would be prejudiced by opening default judgment. **See Fink**, 594 A.2d at 349.

## VI. Conclusion

For the foregoing reasons, we vacate the order of the trial court denying Appellant's petition to open default judgment and remand for a hearing.

September 23, 2022, order denying petition to open default judgment vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2023

- 16 -